HOLMAN v. THOMAS et al.

(Circuit Court of Appeals, Second Circuit. March 7, 1910.)

No. 168.

CORPORATIONS (§ 99*)—ISSUANCE OF STOCK—SUFFICIENCY OF CONSIDERATION.

A contract by a corporation of Minnesota, representing sugar refiners, to issue to plaintiff full-paid shares of its stock, in consideration for which plaintiff agreed to sell a certain part of such shares of stock to retail merchants for par value in cash, to give them other shares as a bonus,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and to establish relations with them by which a co-operative business should be conducted in the manufacture, distribution, and sale of refined sugar, cannot be held void as a matter of law, as in violation of Gen. St. Minn. 1894, § 3415, which provides that corporations having capital stock "shall not issue any shares for a less amount to be actually paid in on each share than the par value of the shares first issued," nor as against public policy, because in fraud of subscribers to the stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 444–446; Dec. Dig. § 99.*]

In Error to the Circuit Court of the United States for the Western District of New York.

Action by William J. Holman against Orlando F. Thomas and Frederick Steigerwald. Judgment (171 Fed. 219) for defendants, and plaintiff brings error. Reversed.

See, also, 175 Fed. 1021.

Selden Bacon, for plaintiff in error.

Richard A. Irving, for defendant in error.

Before LACOMBE, WARD and NOYES, Circuit Judges.

WARD, Circuit Judge. The pleadings in this case are most objectionable. The complaint takes up over 30 printed pages, and is not divided into numbered articles or paragraphs, while the answer refers constantly to parts of the complaint beginning and ending with certain quoted words. In this way the court has been obliged itself to number the paragraphs and to hunt out what the defendants refer to. As the cause will go back for trial, these defects should be corrected.

The defendants moved for judgment on the pleadings under section 547 of the New York Code of Civil Procedure, which was adopted in 1908 and reads as follows:

"If either party is entitled to judgment upon the pleadings, the court may upon motion at any time after issue joined give judgment accordingly."

Such a motion made by the plaintiff is tantamount to a demurrer to the answer, or if made by the defendant to a demurrer to the complaint. Consequently the allegations of the complaint in this case must be taken to be true. They are, without going into unnecessary details, that the plaintiff had conceived a plan whereby sugar refiners might be brought into direct connection with retail grocers in such a way that the grocers would give the refiners all their trade and the refiners would sell to them less jobbers' expenses and commissions and upon a certain credit. Co-operation arising out of mutual interests was expected to make the scheme go.

The defendants, who owned a controlling interest in a sugar refinery, and the plaintiff, accordingly entered into an agreement to organize a corporation under the laws of Minnesota, with a capital of $100,-000,000, of which $75,000,000, full-paid and nonassessable, was to be issued in the plaintiff's name, but to remain in the custody of the defendants as security for his carrying out his agreement with them and another agreement between him and the corporation. The defendants were to advance $100,000 to the plaintiff to enable him to finance the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

corporation until he should raise $10,000,000 in cash by use of $50,-000,000 of the $75,000,000 of stock; the balance to be divided between him and them.

The plaintiff, in his contract with the corporation, agreed as the party of the first part, in consideration of receiving $75,000,000 of full-paid nonassessable stock and a commission of 10 per cent. on the moneys raised, "to procure for the party of the second part, within a reasonable time after the execution of this contract, the sum of ten million dollars ($10,000,000) in money, for use in its business, and to establish agencies among retail merchants for the handling, direct, of the output of the second party, and to make a combination between said party of the second part and as many retail merchants as possible for the purpose of organizing, operating, and conducting a co-operative business enterprise, in the manufacture, distribution, and sale of refined sugar and other food products; such money to be raised, agencies established and combinations to be made, in the name of the company and substantially in accordance with the terms and conditions set forth in the printed forms hereunto attached," and to "devote all of his time and attention to the promotion and increase of the business of the party of the second part, and to furnish all funds necessary for the expenses of such promotion."

The plaintiff was to solicit grocers to subscribe for not less than two nor more than five shares of the company's capital stock, for which they were to pay par in ten equal installments, and were to receive in addition four full-paid nonassessable shares, called "bonus shares," for each share subscribed for. All of this stock was to come out of the $75,000,000 of stock issued in the plaintiff's name. Under this plan the retailers would be able to buy sugar at a reduced price, and because of this reason, as well as of their interest as stockholders in the company, they would naturally give it all their trade. On the other hand, the company, having under the laws of Minnesota a lien upon the stock for all indebtedness of the stockholders, could afford to sell on credit up to the value of the grocer's stock interest.

The complaint alleges that the plaintiff obtained subscriptions from grocers to the amount of $148,400; that the defendants, after advancing $12,000, refused to make further advances, in violation of their agreement, as a consequence of which the corporation returned the grocers' subscriptions and canceled its agreement with him, to his damage in the sum of $2,535,340 and interest.

The laws of Minnesota provide:

"Corporations having capital stock divided into shares, unless specifically authorized, shall not issue any shares for a less amount to be actually paid in on each share than the par value of the shares first issued." Gen. St. Minn. 1894, § 3415.

The trial judge held as matter of law that the consideration to pass from plaintiff to the corporation did not make the stock he received full-paid, and that it was therefore issued in violation of the law of Minnesota; also that to represent it as full-paid to the grocers was a fraud. For these reasons he dismissed the complaint upon the merits.

The scheme was ingenious, and perhaps overconfident and inflated;

but the establishment of such a combination as the plaintiff undertook to make between the company and the retail grocers would obviously be a business relation of value. We cannot say on the complaint alone (assuming that the defendants have a right to make the objection) as matter of law that it was either in violation of the laws of Minnesota or void as against public policy because in fraud of subscribers to the stock.

The judgment for this reason is reversed.